Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant, Mr. Delgado. Mr. Delgado's first argument is that the District Court erred in denying his request for time to retain substitute counsel. And before turning to that and in the context of reviewing that claim, I want to bring this Court's attention to a decision that was issued yesterday called Ahanchian v. Zenon Pictures. It was in the civil context, so it's not factually analogous. In that case, the District Court denied the defendant's request for an extension of time to file an opposition from motion to summary judgment. And the District Court then granted the motion for summary judgment. So it's not factually analogous, but what I wanted to think about in the overall context of reviewing Mr. Delgado's request is the Court's approach towards continuances. The Court said procedure is a means to an end, not an end in itself, and that consequently requests for extensions of time made before the applicable defense deadline is passed should normally be granted in the absence of bad faith or prejudice to the adverse party. And now I want to turn to the specific facts of Mr. Delgado's case. In this case, the indictment was filed in March. The Court scheduled a trial date for May. In April, the parties said that they needed more time to conduct discovery, to conduct investigations. They stipulated to an extension of the trial date, and the Court denied it, saying, But counsel, wouldn't that be consistent with the Speedy Trial Act to have the trial take place in the ordinary course? I know it's, you know, not normal, but that's what the Speedy Trial Act contemplates, is for trial in criminal cases to be done expeditiously. That is what the Speedy Trial Act contemplates, but it's also common for normally that's not enough time in the realities of this legal marketplace for people, for government to produce the discovery, for counsel to review it, to strike up a relationship with a client, to review the discovery with a client, and decide how to go forward. Sixty days simply isn't sufficient. And therefore, in almost all cases, there are requests for extensions which are granted so that counsel can, and in fact, in the Zeon case, they talked about how counsel needs other things than the law. They need their lives. They have to have a balance. And therefore, the law has to take into consideration the realities of legal practice. People need more time. Lawyers need more time with their clients. And therefore, while there is a Speedy Trial Act, it can be waived and it usually is waived when there's good cause shown, as there was in this case. Right. But I'm just saying we don't necessarily condemn a judge for trying to comply with the Speedy Trial Act. No. And normally the trial date is set within the confines of the Speedy Trial Act, and then the parties look at what's going on and how much time they need, and they file the request for an extension with a stipulation, and it's granted. This was an illegal alien case, though, and, of course, there's across the circuit, it's my assumption, correct me please if I'm wrong, that there is continual request for a delay because it's difficult to get the record of the prior deportations in a timely fashion. Sometimes it's difficult to now, under current standards, to agree on what the record is and can be considered, especially with regard to prior convictions that produced the prior deportation. So what I'm saying is in this type of case, there are frequent requests for continuance. Can we fault Judge Reel here for saying, no, I'm going to make these cases stick to the Speedy Trial Act? Well, I think Your Honor points out reasons why counsel do need time. They need to get the records. They can't reach an informed decision about what to do in the case unless they have the full records. And so, therefore, we certainly don't fault Judge Reel for setting it within the Speedy Trial Act, but he needs to be receptive. Right. And, in fact, you're not criticizing that. You're criticizing the failure to give continuance in a sentencing in the sentence. Yes. I mean, I was just beginning with the recitation of the factual basis. I'm not criticizing. Well, I think that initial denial of a request for continuance may have set the tone for what happened later. That's what I was referring to. Yes. But you referred to the fact that the trial was set so quickly. Yes. And that's why I asked you the question. No. You're correct, Your Honor, because that resulted in the defendant pleading guilty in April one month after the indictment, and that may have been what led ultimately to the problems down the road, him feeling railroaded and not knowing if he had been – if everything was done properly. I gather that we review this for abuse of discretion. That's correct, Your Honor. And the Thompson case lays out five bases for considering this. Although, I must confess, this case is a little confusing because, on the one hand, he spoke of continuance. On the other hand, it seemed like he was asking to substitute counsel. That seemed to be the basis for it. That's correct, Your Honor. And, therefore, I think the standard is kind of muddled, and I couldn't really find any case exactly on poet. It's not just a request for continuance because it implicates the fundamental right to counsel, which the courts say adds a certain gloss. You have to consider whether you're infringing a right to counsel when you deny the continuance. But the reality here is we're talking about counsel at sentencing, and he was asking for what could have been an indefinite extension to get private counsel. His family, according to the record, had not assembled some money. He had assembled very much money. He had no ongoing engagement with private counsel, if I understand it correctly. So, in effect, he was saying to the judge, like, I'd like more time to see if I could get a private lawyer. Isn't that what this boils down to? You're absolutely correct, Your Honor. He did not have counsel at the time. And part of the problem that arises from the lack of knowledge as to how close he was to getting counsel is Judge Reel's failure to conduct any inquiry into what was going on. Is that his burden? Well, I think it is. When you raise an issue of a problem with counsel, I think it is the court's burden, because that information can't necessarily come through the counsel. The defendant may not. But was there an issue raised regarding a problem with counsel or just an express preference to have retained counsel? Well, the – at one point in the written stipulation for an extension, he said that he wanted the – he was trying to get retained counsel. At the sentencing hearing, the defense counsel argued that he was attempting to hire private counsel to explore whether or not he could withdraw his plea and or to explore options regarding sentencing. So that suggests that there's some discomfort that's going on that the court should have inquired into, because the client may not – and normally in these cases where there is a difficulty with counsel, the court will inquire because the client may not feel comfortable stating his dissatisfaction. But he had a lawyer, right? He did have a lawyer at that point. Yes, he did. He was just simply saying, hey, I may want to change my mind here. I would like, in effect, an indefinite continuance while I try to find private counsel. We don't have the money for that right now, but we may soon. That's, in effect, where we got here. He – it is true that he didn't have a deadline in mind, that they had – they apparently had accumulated some money. It was an impoverished family. But one of the points, too, is that had the court inquired, if the court had found a basis for new counsel, the court might have been able to provide him with substitute appointed counsel. Do you have any case law, Ms. Young, that would substantiate your position that an indefinite extension to get private counsel at a sentencing after a guilty plea is something that requires a special inquiry by the judge, particularly when it's framed as a request for continuance? I don't have any case on – exactly on that point, Your Honor. And if you look at the Thompson case, which I'm familiar with, I don't see anything in there that would give any basis for your complaint on this thing. I mean, the reality is your client was represented by able counsel. He didn't express as Judge Rawlinson indicated. There was no expression about, I really don't like this lawyer. I can't communicate with the lawyer. All the usual kinds of things, but none of that. He just said he wanted to have private counsel. And he hasn't established any prejudice. I mean, they didn't make any kind of a proffer as to what he was going to be advancing with private counsel. If we agreed with you, basically anybody at a sentencing could continue it indefinitely. Just say, I really don't like this lawyer. I think the lawyer – I can do better with private counsel. I don't have money for this, but someday I will. Now, I understand Your Honor's concern, but I think there was more here and that there was enough here to justify at least the Court's inquiry into what was going on, because there was a written stipulation. There was a representation at sentencing. There were also some things of concern. He said that he hadn't read the PSR completely at sentencing. He had certificates and letters in support of sentencing that hadn't been brought. All those things, I think, signal to the Court that there was an issue here that should have been explored more fully. I see I only have a minute remaining, so unless there are any further questions, I'll reserve some time for rebuttal. All right, thank you. Thank you, Your Honor. We'll hear from the government. May it please the Court. Daniel Levin for the government. It was well within the district judge's broad discretion here to deny the continuance. All the district court had in front of it was a request for more time so that the defense could attempt to retain private counsel. The defendant had a competent lawyer who was prepared for sentencing, and the district court's reaction, it was brief, but it really summed it up that it was too iffy and that counsel was prepared. There was really no necessity in continuing it out. The government didn't object to this continuance, and it probably would have been within the court's discretion to say, take 30 days, maybe you'll find someone, and we'll come back then. But district judges do have broad discretion, and they're not required to just turn over their calendars to the parties. And the district judge here was within that discretion in saying, we're going to go forward today on sentencing. There's just no showing here that there's any real prejudice because there's no showing that it would have, in 30 days, the defense would have had a new counsel. All they said is, we are attempting to get money, we have some. There's really nothing more than that. And on that basis, the district judge, I think, was within its discretion in saying no. What's your response to opposing counsel's observation that there were some signs that there were difficulties between the defendant and his attorney? I don't think there really were signs that there had been a breakdown in communication. All that they had was, he said, one new counsel to maybe explore withdrawing a plea, maybe explore different sentencing arguments. That's not really a breakdown in counsel. That may be the defense. The defendant is unhappy with the fact that he's looking at a significant sentence, but it's not really a breakdown in communication. In the issue with the PSR, he'd read some of it. It's not clear why he hadn't read the whole thing. The district judge did break, stop the sentencing proceeding, put it to the back of the calendar, allowed the defendant to read it, go over it with counsel. He came back and said, do you have any changes? Defendant said no. So that really was addressed, and the court, I think, acted quite appropriately in giving a little time to work that out. The first time the defendant actually says, I have a problem with counsel, I don't have faith, is until later when he files his pro se notice of appeal, which came actually one day after his defense attorney had filed a timely notice of appeal. So whatever lack of faith he had on that issue wasn't really justified. So I don't think the district judge needs to sort of read the tea leaves and somehow intuit that maybe the defendant has an issue. There are lots of reasons why a defendant with appointed counsel might want to hire private counsel. Many defendants, I think, labor under the misimpression that a free counsel is not as good as a paid counsel, even though anyone who spends any time in the criminal justice system knows that's not true. But there's nothing that you can do, I think, in some cases, to disabuse a defendant of that belief. I'm interested in this question of whether it was error to assess the two points for counsel makes the argument that the warrant, outstanding warrant, created the need for two additional points. But the unfairness of doing that because the person was deported, and that's the reason they didn't report. That's why there was an outstanding warrant. Your response seems to be, of course, that, well, the judge did a below guidelines sentence anyway. But, of course, we know from the Ninth Circuit precedent and the U.S. Supreme Court precedent that, nevertheless, it is error. The judge has to calculate correctly the starting point, that is the guideline sentence and range. So how do you respond? Was that unfair to include that? And does that require a remand? Or do we, in essence, have a fair result here because there was a below guideline sentence? Well, I don't think it was unfair. Let me address the guideline calculation issue first and then the harmless error issue. The guideline calculation issue has two points I think that are important. The first is just the point that he was deported in May. We don't know from the record when he came back. So it is possible that he was still in Mexico in August when the violation hearing is, but we don't know. And the other point is he came back at some point, and he had enough time to amass three guns and be ready to sell them, and he didn't go and clean up the State warrant. So he certainly had an opportunity to address it. He certainly knew he was on State probation. You know, he'd been sentenced and been told he was on probation and been told about the reporting requirements. So I don't think there's just an inherent unfairness in holding him to the fact that there was still a probation warrant because he'd done nothing on his State probation. He certainly had some opportunity to deal with that. And then the legal issue is that this Court has said pretty clearly you can't collaterally attack a State sentence in a sentencing proceeding. And we cite the Davis case from the 11th Circuit in the brief. And Davis collects up, I think, four circuits that have really on this issue, the 4A1.1D issue said if there's a violation warrant outstanding, Federal sentencing is not the time to collaterally attack it. You can't do it. In the reply brief, defendants cite this Parks case, but that's a little different issue because that involves a State warrant that doesn't have a willfulness requirement and therefore raises a constitutional issue that, with that limited exception, which you can deal with at a Federal sentencing, you can't really at a Federal sentencing go back and attack the State warrant. California does have a willfulness requirement, so it's not the same as the Washington issue that was involved in the Parks case. So I think both from just a general fairness standard, defendant had an opportunity here. And then from the narrower legal perspective, it's just not within the realm of the district court's authority to open up a proceeding on the validity of the State warrant at the Federal sentence. With respect to the harmless error point, I understand the Kamara-Munoz case says that misguideline calculation requires a remand, the recent case, and there's another recent case, the Ali case, that says the opposite and the government's asked for a rehearing. So that issue is out there, but I don't think the court even needs to get to that because I don't think there was error here at all in the sentencing. I gather the government does concede that Judge Real was incorrect when he referred to 8 U.S.C. 1326A.B.2 and that it needs to be remanded so that it could be issued under 1326A. Is that correct? It's an error that that appears in the J&C and the judgment commitment order in this court has said as much. I think it could be cured by just an instruction in this court's opinion or through a remand limited to that narrow issue. But you do agree that under Maria Gonzalez, we do need to have Judge Real correct that, right? B.2 should not be referenced in the judgment commitment order. That's correct. For the record, of course, you invited the error because it's contained that way in the indictment and in your request for judgment. It's in the indictment. The reason it's in the indictment is because of the possibility that Almendares-Torres might one day be overturned. So that's why the government charges it in the indictment. You need to rephrase your indictments and or the language in the guilty plea. It might be wise to be clear why it's out of this possibility that's sort of always hanging out there about Almendares-Torres, but that is the reason why it's there. It's not just out of oversight. It's because of that risk. Counsel, going back to the continuance for a moment, what's your response to opposing counsel's observation that there were certificates and other documents that Mr. Delgado wanted to put into the record that were not placed in there and that was an indication of a problem with his attorney? I don't know that that's an indication of a problem with the attorney. Again, it's – all it shows is the defendant didn't – he either didn't show them to his attorney, he didn't – he could have brought them to sentencing, as the court pointed out, and he didn't. I don't think it shows that there was any sort of real breakdown there because the defense counsel did put in a sentence submission well before sentencing, did make arguments at sentencing, got the defendant a pretty good sentence, got the defendant a very good plea agreement where the government agreed to recommend a fast-track departure even though this wasn't a fast-track case. So I think he got very good representation out of his counsel, and I don't think the court is supposed to – is required to intuit, maybe there's something going on here. Let's break. Let's go in camera and have a conversation about it. It's just the court has some discretion here, and I think it was within its discretion to just move forward on the basis of the competent counsel. Thank you, Your Honors. Thank you. Rebuttal? Thank you, Your Honor. I just have two very quick points to make with respect to the alleged error by Mr. Delgado in imposing criminal history points under Section 4A1.1d. The government attorney said that he was deported in May, and it was possible that he could have returned before the failure to appear in August. But, in fact, he wasn't found in the United States until three years later. And his probation expired in 2007. Now, the counsel for the government also says he could have cleared the warrant, but there's no evidence he knew the warrant was there. He didn't know that he had failed to appear because he'd been deported. He knew that his probation was scheduled to expire in 2007. We only know that he returned in 2009, so there's no evidence he knew that the warrant had not or that his probation had not, in fact, expired by its normal term in 2007. Do the arguments go to a collateral challenge to a State proceeding that's impermissible? Well, that's the next point I want to get to, because in this case the Court has held that there are contexts in which you can attack the warrant. And the case that we cited is the Parks case that says that imposition of two additional criminal history points in the context of a failure to pay a financial obligation without a finding of a willful failure to pay was reversible plain error. And in this case we similarly conclude that the Court should have found that there was no willful failure to appear. All right. Thank you, counsel. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted for decision by the Court. The case of United States v. Watson has been submitted on the briefs. The next case on calendar for argument is Gutierrez v. Advanced Medical Optics.
judges: Jones, Rawlinson, Smith M.